## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

FEDERAL TRADE COMMISSION, )
                   )
             Plaintiff, )
                   )
v. )      Case No. 1:97-cv-01114-AVB
                   )
INTERNATIONAL PRODUCT DESIGN, INC.; THE )
INNOVATION CENTER, INC.; NATIONAL IDEA )
CENTER, INC.; NEW PRODUCTS OF AMERICA, INC.; )
AZURE COMMUNICATIONS, INC. dba LONDON )
COMMUNICATIONS, INC.; INTERNATIONAL )
LICENSING CORPORATION, INC.; ROBERT N. )
WAXMAN; PETER DORAN; DARRELL MORMANDO; )
JULIAN GUMPEL; AND GREG WILSON, )
                   )
             Defendants. )

## EX PARTE TEMPORARY RESTRAINING ORDER

On November 18, 1998, this Court entered a Stipulated Order for Permanent Injunction

and Final Relief ("Stipulated Order"). The Stipulated Order resolved the case filed by the

Plaintiff, the Federal Trade Commission ("FTC" or "Commission") as to several defendants,

including Julian Gumpel ("Gumpel"), Azure Communications, Inc. ("Azure"), and London

Communications, Inc. ("LCI"). The FTC has moved *ex parte* for a Temporary Restraining Order

with Ancillary Equitable Relief, and a Preliminary Injunction, Pending Decision on Plaintiff's

Motion to Show Cause Why Julian Gumpel and Eight Business Entities under His Control

Should Not Be Held in Contempt ("Motion for Temporary Restraining Order").

This Court has considered Plaintiff's Motion for Temporary Restraining Order, and the declarations, exhibits, and memorandum of law submitted in support thereof, and finds as follows:

1.     This Court has jurisdiction over this matter for all purposes, as specifically reserved in Section XI ("Retention of Jurisdiction") of the Stipulated Order.

2.     There is good cause to believe that Julian Gumpel; Technical Lithographers, Inc., d/b/a Patent & Trademark Institute of America; United Licensing Corp.; International Patent Advisors, Inc.; Datatech Consulting, Inc.; International Product Marketing, Inc.; Unicorp Consulting, Inc.; Azure Communications, Inc.; and London Communications, Inc. (hereinafter, collectively "Contempt Defendants") have actual notice of the Stipulated Order and the ability to comply with that order.

3.     There also is good cause to believe that Contempt Defendants have violated, and continue to violate, the Stipulated Order. Specifically, the evidence submitted with Plaintiff's *ex parte* Motion for Temporary Restraining Order and its Motion for Order to Show Cause, and the supporting memoranda, shows that there is good cause to believe Contempt Defendants have violated the core provisions of the Stipulated Order through their operation of an invention promotion business that misrepresents the likelihood that their services will result in financial gain; falsely claims to assess the market potential, patentability, and merit of consumers' ideas; and fails to make affirmative disclosures required by the Stipulated Order.

4.     The FTC has not provided notice to Contempt Defendants of its Motions due to the likelihood that advance notice of this action will lead to the dissipation of assets and the destruction of property or evidence. The FTC's request for *ex parte* relief is premised on

2

Contempt Defendants' continuing order violations, their use of shell corporations, including several defunct entities, and Gumpel's past history of dishonesty and violation of court orders. Based on the foregoing, there is good cause to issue this order on an *ex parte* basis.

5.    The Court has considered the FTC's likelihood of ultimate success and weighed the equities, and finds that a temporary restraining order providing for an asset freeze, the appointment of a Temporary Receiver, the preservation of business records, financial disclosures, expedited discovery, and other equitable relief is in the public interest.

6.    Fed. R. Civ. P. 65(c) does not require security of the United States or an officer or agency thereof.

## I.
## DEFINITIONS

For the purposes of this Temporary Restraining Order, the following definitions apply:

A.    "Contempt Defendants" means Julian Gumpel; Technical Lithographers, Inc., d/b/a Patent & Trademark Institute of America; United Licensing Corp.; International Patent Advisors, Inc.; Datatech Consulting, Inc.; International Product Marketing, Inc.; Unicorp Consulting, Inc.; Azure Communications, Inc., and London Communications, Inc., and each of them, individually and jointly; and their successors and assigns.

B.    "Receivership Defendants" means Technical Lithographers, Inc., d/b/a Patent & Trademark Institute of America; United Licensing Corp.; International Patent Advisors, Inc.; Datatech Consulting, Inc.; International Product Marketing, Inc.; Unicorp Consulting, Inc.; Azure Communications, Inc., and London Communications, Inc., and each of them individually and jointly; any affiliates or subsidiaries thereof that any Receivership Defendant controls; and their successors and assigns.

3

C.      "Assets" means any legal or equitable interest in, right to, or claim to, any and all real and personal property of Contempt Defendants, or held for the benefit of Contempt Defendants, including but not limited to chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, inventory, checks, notes, accounts, credits, receivables, shares of stock, contracts, and all cash and currency, or other assets, or any interest therein, wherever located.

D.      "Receiver" or "Temporary Receiver" shall mean the Temporary Receiver appointed in Section VIII of this Order. The term "Temporary Receiver" also includes any deputy receivers or agents as may be named by the temporary receiver.

## II.
## ASSET FREEZE

IT IS FURTHER ORDERED that Contempt Defendants are hereby temporarily restrained and enjoined from directly or indirectly:

A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest in, or otherwise disposing of any assets, wherever located, including outside the United States, that are (1) owned or controlled, directly or indirectly, by any Contempt Defendant(s), in whole or in part, or held, in whole or in part for the benefit of any Contempt Defendant(s); (2) in the actual or constructive possession of any Contempt Defendant(s); or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Contempt Defendant(s), including but not limited to, any assets held by, for, or under the name of any

4

Contempt Defendant(s) at any bank, savings and loan institution, or bank of any Contempt Defendant(s), or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind;

B.    Opening or causing to be opened any safe deposit boxes titled in the name of any Contempt Defendant(s), or subject to access by any Contempt Defendant(s);

C.    Incurring charges or cash advances on any credit card, debit card, or checking card

issued in the name, singly or jointly, of any Contempt Defendant(s);

D.    Obtaining a personal or secured loan;

E.    Incurring liens or encumbrances on real property, personal property or other assets

in the name, singly or jointly of any Contempt Defendant(s); and

F.    Cashing any checks from consumers, clients, or customers of any Contempt Defendant(s).

The assets affected by this Section shall include (a) all assets of Contempt Defendants as of the time this Order is entered; and (b) those assets obtained after entry of this Order that are derived from any conduct that violates the Stipulated Order. This Section does not prohibit transfers to the Receiver, as specifically required in Sections X (Delivery of Receivership Property) and XI (Transfer of Funds to Receiver by Financial Institutions and Third Parties), nor does it prohibit the Repatriation of Foreign Assets, as specifically required in Section IV of this Order.

5

III.
FINANCIAL REPORTS

IT IS FURTHER ORDERED that each Contempt Defendant shall, within three (3) business days after service of this Order, prepare and serve on counsel for Plaintiff and the Receiver:

A.      Completed financial statements fully disclosing their own finances and those of all corporations, partnerships, trusts or other entities that they now own, control, or are associated with in any capacity on the forms attached to this Order as Attachments A and B, accurate as of the date of service of this Order upon Contempt Defendants; and

B.      Copies of signed and completed federal and state income tax forms, including all schedules and attachments for the three most recent filing years.

Contempt Defendants shall provide copies of such other financial statements as the Receiver or Plaintiff may, from time to time, request in order to monitor Contempt Defendants' compliance with the provisions of this Order.

IV.
FOREIGN ASSET REPATRIATION

IT IS FURTHER ORDERED that, within three (3) business days following the service of this Order, each Contempt Defendant shall:

A.      Provide counsel for Plaintiff and the Receiver with a full accounting of all funds and assets outside of the territory of the United States which are held either: (1) by Contempt Defendant(s); (2) for the benefit of any Contempt Defendant(s); or (3) under direct or indirect

6

control, individually or jointly, of any Contempt Defendant(s), as required by the forms included in Attachments A and B;

    B.    Transfer to the territory of the United States all such funds and assets in foreign countries; and

    C.    Hold and retain all repatriated funds and assets, and prevent any disposition, transfer, or dissipation whatsoever of any such assets or funds, except as required by this Order.

Contempt Defendants shall provide access to records and documents held by financial institutions outside the territorial United States, by signing the Consent to Release of Financial Records attached to this Order as Attachment C, immediately upon service of this Order upon them, or within such time as permitted by the Receiver or counsel for Plaintiff in writing.

## V.
## NON-INTERFERENCE WITH REPATRIATION

IT IS FURTHER ORDERED that Contempt Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section IV of this Order, including but not limited to:

    A.    Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement,

7

until such time that all assets have been fully repatriated pursuant to Section IV of this Order; and

     B.     Notifying any trustee, protector or other agent of any foreign trust or other related

entities of either the existence of this Order, or of the fact that repatriation is required pursuant to

a Court Order, until such time that all assets have been fully repatriated pursuant to Section IV of

this Order.

VI.
COOPERATION WITH THE RECEIVER

     IT IS FURTHER ORDERED that Contempt Defendants shall fully cooperate with and

assist the Receiver. Contempt Defendants' cooperation and assistance shall include, but not be

limited to, providing any information to the Receiver that the Receiver deems necessary to

exercise the authority and discharge the responsibilities of the Receiver under this Order;

providing any password required to access any computer or electronic files or information in any

medium; or advising all persons who owe money to the Receivership Defendants that all debts

should be paid directly to the Receiver. Contempt Defendants are hereby restrained and

enjoined from directly or indirectly:

     A.     Transacting any of the business of the Receivership Defendants;

     B.     Excusing debts owed to the Receivership Defendants;

     C.     Destroying, secreting, defacing, transferring, or otherwise altering or disposing of

any documents of the Receivership Defendants;

     D.     Transferring, receiving, altering, selling, encumbering, pledging, assigning,

liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or

custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the

8

Receiver;

E.    Failing to notify the Receiver of any asset, including accounts, of any

Receivership Defendants held in any name other than the name of one of more Receivership

Defendants or by any person or entity other than Receivership Defendants or failing to provide

any assistance or information requested by the Receiver in connection with obtaining possession,

custody, or control of such assets; or

F.    Doing any act or thing whatsoever to interfere with the Receiver's taking and

keeping custody, control, possession, or managing of the assets or documents subject to this

receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner

with the exclusive jurisdiction of this Court over the assets or documents of the Receivership

Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents

in the exercise of their duties or authority under any Order of this Court.

This Section does not prohibit transfers to the Receiver, as specifically required in

Sections X (Delivery of Receivership Property) and XI (Transfer of Funds to Receiver by

Financial Institutions and Third Parties), nor does it prohibit the Repatriation of Foreign Assets,

as specifically required in Section IV of this Order.

## VII.
## RETENTION OF ASSETS BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

IT IS FURTHER ORDERED that any financial or brokerage institution, escrow agent,

title company, commodity trading company, trust, entity, or person that holds, controls or

maintains custody of any account or asset owned or controlled by any Contempt Defendant(s), or

9

has held, controlled or maintained any account or asset of, or on behalf of, any Contempt
Defendant(s) at any time since the entry of this Court's Stipulated Order on November 18, 1998,
upon service with a copy of this Order, shall:

A.  Hold and retain within its control and prohibit Contempt Defendants from
withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating,
converting, selling, gifting, or otherwise disposing of any of the assets, funds, or other property
held by or on behalf of any Contempt Defendant(s) in any account maintained in the name of or
for the benefit of any Contempt Defendant(s), in whole or in part, except:

1.  as directed by further order of the Court;

2.  as directed in writing by the Receiver (regarding assets held in the name or for the
benefit of Receivership Defendants); or

B.  Deny the Contempt Defendants access to any safe deposit box titled in the name
of any Contempt Defendant(s), individually or jointly, or subject to access by any Contempt
Defendant(s), whether directly or indirectly;

C.  Provide counsel for Plaintiff[1] and the Receiver, within three (3) business days
after being served with a copy of this Order, a certified statement setting forth:

1.  the identification number of each such account or asset titled (1) in the name,
individually or jointly, of any Contempt Defendant(s); (2) held on behalf of, or for
the benefit of, any Contempt Defendant(s); (3) owned or controlled by any

---

[1]For purposes of this Order, Counsel for Plaintiff means FTC attorneys Elizabeth Tucci
and Matthew Wilshire, and any other FTC attorneys who appear in this action after the entry of
this Order. Counsel for Plaintiff's mailing address for all materials mailed pursuant to this Order
is 600 Pennsylvania Ave., N.W., Mailstop NJ-2122, Washington, D.C. 20580. Counsel for
Plaintiff's fax number is (202) 326-2558.

Contempt Defendant(s); or (4) otherwise subject to access by any Contempt Defendant(s), directly or indirectly;

2.   the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

3.   the identification of any safe deposit box that is either titled in the name of any Contempt Defendant(s), or is otherwise subject to access by any Contempt Defendant(s);

4.   if an account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance on such date, and the manner in which such account or asset was closed or removed.

D.   Provide counsel for Plaintiff or the Receiver, within three (3) business days after being served with a request, copies of all documents pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; provided that such institution or custodian may charge a reasonable fee.

E.   Cooperate with all reasonable requests of the Receiver relating to this Order's implementation.

11

VIII.
APPOINTMENT OF TEMPORARY RECEIVER

IT IS FURTHER ORDERED that *Phillp Steur, Stewart Itq* is appointed

Temporary Receiver for Receivership Defendants, and any affiliates or subsidiaries thereof
controlled by any Receivership Defendant(s), with the full power of an equity Receiver. The
Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver
under this Order. The Receiver shall be accountable directly to this Court. The Receiver shall
comply with all local rules and laws governing federal equity receivers.

IX.
DUTIES AND AUTHORITY OF RECEIVER

IT IS FURTHER ORDERED that the Receiver is directed and authorized to accomplish
the following:

A.    Assume full control of the Receivership Defendants by removing, as the Receiver
deems necessary or advisable, any director, officer, independent contractor, employee, attorney,
or agent of the Receivership Defendants, including any Contempt Defendant(s), from control of,
management of, or participation in, the affairs of the Receivership Defendants.

B.    Take exclusive custody, control and possession of all assets and documents of, or
in the possession, custody, or under the control of, the Receivership Defendants, wherever
situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take
in possession, hold, and manage all assets and documents of the Receivership Defendants and
other persons or entities whose interests are now held by or under the direction, possession,

12

custody, or control of the Receivership Defendants.

    C.    Take all steps necessary to secure the business premises of the Receivership Defendants, which may include, but are not limited to, taking the following steps as the Receiver deems necessary or advisable: (1) serving and filing this Order; (2) completing a written inventory of all receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) video-recording all portions of the location; (5) changing the locks and disconnecting any computer modems or other means of access to the computer or other documents maintained at that location; or (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants. Such authority shall include, but not be limited to, the authority to order any owner, director, or officer of any Receivership Defendant to remove him or herself from the business premises.

    D.    Conserve, hold, and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers, including, but not limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets.

    E.    Enter into contracts and purchase insurance as advisable or necessary.

    F.    Prevent the inequitable distribution of assets and to determine, adjust, and protect

13

the interests of consumers and creditors who have transacted business with one or more
Receivership Defendants.

G.    Manage and administer the business of the Receivership Defendants until further
order of this Court by performing all incidental acts that the Receiver deems to be advisable or
necessary, which includes retaining, hiring, or dismissing any employees, independent
contractors, or agents.

H.    Choose, engage, and employ attorneys, accountants, appraisers, investigators, and
other independent contractors and technical specialists, as the Receiver deems advisable or
necessary in the performance of duties and responsibilities.

I.    Make payments and disbursements from the receivership estate that are necessary
or advisable for carrying out the directions of, or exercising the authority granted by, this Order.
The Receiver shall apply to the Court for prior approval of any payment of any debt or
obligation incurred by the Receivership Defendants prior to the date of entry of this Order,
except payments that the Receiver deems necessary or advisable to secure assets of the
Receivership Defendants, such as rental payments.

J.    Collect any money due or owing to the Receivership Defendants.

K.    Institute, compromise, adjust, appear in, intervene in, or become party to such
actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and
advisable to preserve or recover the assets of the Receivership Defendants or to carry out the
Receiver's mandate under this Order.

L.    Defend, compromise, adjust, or otherwise dispose of any or all actions or
proceedings instituted against the Receivership Defendants or the Receiver, that the Receiver

14

deems necessary and advisable to preserve the assets of the Receivership Defendants or to carry out the Receiver's mandate under this Order.

M.    Continue and conduct the businesses of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably, using the assets of the receivership estate, and lawfully, if at all.

N.    Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership and compliance with this Order and the Stipulated Order. Subpoenas may be served by agents or attorneys of the Receiver and by agents of any process server retained by the Receiver.

O.    Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account.

P.    Maintain accurate records of all receipts and expenditures made by the Receiver.

Q.    The Receiver is directed to pay all employees of Receivership Defendants any wages and salary accrued up to the date the Receiver accesses the business premises identified in Section XV, provided that the Receiver shall make said payment within ten days of service of this Order upon all Contempt Defendants, and further provided that payments shall be made from the liquid assets of the Receivership Defendants.

15

## X.
### DELIVERY OF RECEIVERSHIP PROPERTY

IT IS FURTHER ORDERED that immediately upon service of this Order upon them, the Contempt Defendants, including the Receivership Defendants, shall forthwith or within such time as permitted by the Receiver in writing, deliver to the Receiver possession and custody of:

A.    All funds, assets, and property of the Receivership Defendants, whether situated within or outside the territory of the United States, which are: (1) held by one or more Receivership Defendants, individually or jointly, (2) held for the benefit of one or more Receivership Defendants, or (3) under the direct or indirect control, individually or jointly, of more of more Receivership Defendants;

B.    All documents of the Receivership Defendants, including but not limited to all books and records of assets including funds and property, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), corporate minutes, contracts, customer and consumer lists, title documents, and electronic records;

C.    All funds and other assets belonging to members of the public now held by one or more Receivership Defendants;

D.    All keys, computer and other passwords, entry codes, combinations to locks required to open or gain access to any of the property or effects, and all monies in any bank deposited to the credit of the Receivership Defendants, wherever situated; and

E.    Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendants.

16

## XI.
## TRANSFER OF FUNDS TO THE RECEIVER
## BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

IT IS FURTHER ORDERED that, upon service of a copy of this Order, any financial or

brokerage institution or depository, escrow agent, title company, commodity trading company, or

trust shall cooperate with all reasonable requests of counsel for Plaintiff and the Receiver

relating to implementation of this Order, including transferring funds at the Receiver's direction

and producing records related to the assets and sales of the Receivership Defendants.

## XII.
## RECEIVER'S REPORTS

IT IS FURTHER ORDERED that the Receiver shall report to this Court on or before the

date set for the hearing to Show Cause regarding the Preliminary Injunction or the hearing to

Show Cause regarding the Contempt Motion, whichever occurs first, on: (1) the steps taken by

the Receiver to implement the terms of this Order; (2) the value of all liquidated and

unliquidated assets of the Receivership Defendants; (3) the sum of all liabilities of the

Receivership Defendants; (4) the steps the Receiver intends to take in the future to: (a) prevent

any diminution in the value of assets of the Receivership Defendants; (b) pursue receivership

assets from third parties; and (c) adjust the liabilities of the Receivership Defendants, if

appropriate; and (5) any other matters which the Receiver believes should be brought to the

Court's attention. Provided, however, if any of the required information would hinder the

Receiver's ability to pursue receivership assets, the portions of the Receiver's report containing

such information may be filed under seal and not served on the parties.

17

## XIII.
## RECEIVER'S BOND

IT IS FURTHER ORDERED that the Receiver shall file with the Clerk of this Court a bond in the sum of $ **10,000** with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## XIV.
## COMPENSATION OF RECEIVER

IT IS FURTHER ORDERED that the Receiver, and all persons or entities retained or hired by the Receiver as authorized under this Order, shall be entitled to reasonable compensation for the performance of duties undertaken pursuant to this Order and for the cost of actual out-of- pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendants. The Receiver shall file with the Court and serve on the parties a request for the payment of reasonable compensation at the time of the filing of any report required by Section XII. The Receiver shall not increase the fees or rates used as the bases for such fee applications without prior approval of the Court.

## XV.
## RECEIVER AND COMMISSION ACCESS TO
## BUSINESS PREMISES AND RECORDS

IT IS FURTHER ORDERED that Contempt Defendants shall allow Plaintiff, the Receiver, and their respective representatives, agents, contractors, or assistants, immediate access to any business premises and storage facilities owned, controlled, or used by one or more

18

of the Receivership Defendants as well as any other location where one or more Receivership Defendants has conducted business and where property or business records are likely to be located. Such locations include, but are not limited to, the offices and facilities of the Receivership Defendants at or in the vicinity of 400 Garden City Plaza, Suite 100, Garden City, NY 11530; 7965 West Sahara Ave., Suite 101, Las Vegas, NV 89117; and 12310 Pinecrest Rd., Suite 206, Reston, VA 20191.

Counsel for Plaintiff and the Receiver are authorized to employ the assistance of law enforcement officers as deemed necessary, to effect service and to implement peacefully the provisions of this Order. The Receiver shall allow counsel for Plaintiff into the premises and facilities described in this Section and shall allow counsel for Plaintiff and its representatives, agents, contractors, or assistants to inspect, inventory, and copy documents relevant to any matter contained in the Stipulated Order. Counsel for Plaintiff and the Receiver may exclude Contempt Defendants and their agents and employees from the business premises and facilities during the immediate access.

Contempt Defendants and all agents or employees of Contempt Defendants shall provide counsel for Plaintiff and the Receiver with any necessary means of access to documents, including, without limitation, the locations of Receivership Defendants' business premises, keys and combinations to business premises locks, computer access codes of all computers used to conduct Receivership Defendants' business, and storage area access information.

The Receiver and counsel for Plaintiff shall have the right to remove any documents related to Contempt Defendants' business practices from the premises in order that they may be inspected, inventoried, and copied. The materials so removed shall be returned within three (3)

19

business days of completing said inventory and copying.

If any property, records, documents, or computer files relating to the Receivership Defendants' finances or business practices are located in the residence of any Contempt Defendant or are otherwise in the custody or control of any Contempt Defendant, then such Contempt Defendant shall produce them to the Receiver within twenty-four (24) hours of service of this Order.

In order to prevent the destruction of computer data, upon service of this Order upon Contempt Defendants, any such computers shall be powered down (turned off) in the normal course for the operating systems used on such computers and shall not be powered up or used again until produced for copying and inspection, along with any codes needed for access.

## XVI.
## DEFENDANTS' ACCESS TO BUSINESS PREMISES AND RECORDS

IT IS FURTHER ORDERED that the Receiver shall allow the Contempt Defendants and their representatives reasonable access to the premises of the Receivership Defendants. The purpose of this access shall be to inspect, inventory, and copy any and all documents and other property owned by or in the possession of the Receivership Defendants, provided that those documents and property are not removed from the premises. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XVII.
## PRESERVATION OF RECORDS

IT IS FURTHER ORDERED that Contempt Defendants and their successors, assigns, officers, agents, servants, employees and attorneys, and those persons in active concert or

20

participation with him who receive actual notice of this Order by personal service or otherwise, directly or through any corporation or other device, are temporarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or finances of any Contempt Defendant.

## XVIII.
## DISCOVERY

IT IS FURTHER ORDERED that the FTC is granted leave to conduct certain expedited discovery, and that, commencing with the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, expedited discovery as to parties and non-parties shall proceed as follows:

A.      The FTC may, upon three (3) calendar days notice, take the deposition of any person or entity, whether or not a party, in any judicial district, for the purpose of discovering: (1) the assets of Contempt Defendants; and (2) compliance with the Stipulated Order and this Order. Deposition transcripts that have not been signed by the witness may be used at the preliminary injunction hearing in this matter. *Provided that*, notwithstanding Fed. R. Civ. P. 30(a)(2), this Subparagraph shall not preclude any future depositions by the FTC. *Provided further*, that any deposition taken pursuant to this sub-paragraph shall be in addition to, and not subject to, the presumptive limits on depositions set forth in Fed. R. Civ. P. 30(a)(2)(A). Service of discovery upon a Contempt Defendant, taken pursuant to this Section, shall be sufficient if made by facsimile or by overnight delivery.

B.      The FTC may, upon five (5) calendar days notice, including through the use of a

21

Rule 45 Subpoena, demand the production of documents from any person or entity, whether or not a Contempt Defendant, relating to (1) the assets of Contempt Defendants; and (2) compliance with the Stipulated Order and this Order. *Provided* that two (2) calendar days notice shall be deemed sufficient for the production of any such documents that are maintained or stored only as electronic data. For purposes of this subsection, the FTC may serve any such subpoena by facsimile or overnight courier.

     C.     The FTC is granted leave to subpoena documents immediately from any Financial Institution, account custodian, or other entity or person that holds, controls, or maintains custody of any account or asset of any Contempt Defendant(s), or has held, controlled or maintained custody of any account or asset of any Contempt Defendant(s) concerning the nature, location, status, and extent of Contempt Defendants' Assets, and compliance with this Order, and such financial institution, account custodian or other entity shall respond to such subpoena within five (5) business days after service. For purposes of this subsection, the FTC may serve any such subpoena by facsimile or overnight courier.

XIX.
CONSUMER CREDIT REPORTS

     IT IS FURTHER ORDERED that pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer report concerning any of Contempt Defendants to counsel for Plaintiff or the Receiver.

## XX.
## BANKRUPTCY PETITIONS

IT IS FURTHER ORDERED that, in light of the appointment of the Receiver, the

Receivership Defendants are hereby prohibited from filing a petition for relief under the United

States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, without prior permission from this Court.

## XXI.
## STAY OF ACTIONS

IT IS FURTHER ORDERED that:

A.      Except by leave of this Court, during the pendency of the Receivership ordered

herein, Contempt Defendants and all customers, principals, investors, creditors, stockholders,

lessors, and other persons seeking to establish or enforce any claim, right or interest against or

on behalf of Contempt Defendants, and all others acting for or on behalf of such persons,

including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their

deputies, and their respective attorneys, servants, agents and employees be and are hereby stayed

from:

1.      Commencing, prosecuting, continuing, entering, or enforcing any suit or

proceeding, except that such actions may be filed to toll any applicable statute of

limitations;

2.      Accelerating the due date of any obligation or claimed obligation; filing or

enforcing any lien; taking or attempting to take possession, custody, or control of any

asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether

such acts are part of a judicial proceeding, are acts of self-help, or otherwise; or

23

3.     Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4.     Doing any act or thing whatsoever to interfere with the Receiver's taking custody, control, possession, or management of the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants.

B.     This Section does not stay:

1.     The commencement or continuation of a criminal action or proceeding;

2.     The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3.     The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

4.     The commencement of any action by the Secretary of the United States Department of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by the Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property, consisting of five or more living units; or

5.     The issuance to a Contempt Defendant of a notice of tax deficiency.

24

## XXII.
## SERVICE OF ORDER

IT IS FURTHER ORDERED that copies of this Order may be served by any means, including facsimile transmission or email, by employees or agents of the FTC or the Receiver, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of Contempt Defendants, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## XXIII.
## ACKNOWLEDGMENT OF RECEIPT OF ORDER BY CONTEMPT DEFENDANTS

IT IS FURTHER ORDERED that each Contempt Defendant, within three (3) business days of receipt of this Order, must submit to counsel for Plaintiff a truthful sworn statement acknowledging receipt of this Order.

## XXIV.
## PROOF OF DISTRIBUTION OF TEMPORARY RESTRAINING ORDER BY CONTEMPT DEFENDANTS

IT IS FURTHER ORDERED that Contempt Defendants shall immediately provide a copy of this Order to their agents, servants, employees, consultants, and any affiliated businesses, and other persons and entities subject in any part to their direct or indirect control. Within five (5) business days of receipt of this Order, Contempt Defendants must submit to counsel for Plaintiff a truthful sworn statement identifying those persons and entities to whom this Order has been distributed.

25

## XXV.
### EXPIRATION OF TEMPORARY RESTRAINING ORDER

IT IS FURTHER ORDERED that the Temporary Restraining Order granted herein

expires on the _____ day of _____, 2007, after entry unless, within

such time, the Order, for good cause shown, is extended for an additional period not to exceed

ten (10) calendar days, or unless it is extended with the consent of the parties.

## XXVI.
### ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION

IT IS FURTHER ORDERED that each of the Contempt Defendants shall appear before

this Court on the _____ day of _____, 2007, at _____ m. at the Albert V.

Bryan Courthouse of the United States District Court for the Eastern District of Virginia, 401

Courthouse Square, Room _____, Alexandria, VA 22314, to show cause, if any there be, why

this Court should not enter a Preliminary Injunction, pending a final ruling on Plaintiff's Motion

for a Civil Contempt Order against Contempt Defendants.

## XXVII.
### RETENTION OF JURISDICTION

IT IS FURTHER ORDERED the Court shall continue to retain jurisdiction of this matter

for all purposes.

IT IS SO ORDERED, this _____ day of _____, 2007, at _____ .m.

_____
United States District Judge

26

DAVID C. FIX
RAOUF ABDULLAH
MICHELLE CHUA
Federal Trade Commission
6th St. & Pennsylvania Ave., N.W.
Washington, D.C. 20580
(202) 326-3248 (voice)
(202) 326-3392 (facsimile)

DENNIS E. SZYBALA
VA Bar No. 22785
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIV. ACT. NO. 97-1114-A |
| v. | ) |
| | ) |
| INTERNATIONAL PRODUCT DESIGN, INC.; THE INNOVATION | ) |
| CENTER, INC.; NATIONAL IDEA CENTER; AMERICAN | ) |
| INVENTION ASSOCIATES, INC.; INVENTION CONSULTANTS, | ) |
| USA, INC.; NEW PRODUCTS OF AMERICA, INC.; AZURE | ) |
| COMMUNICATIONS, INC., dba LONDON COMMUNICATIONS, | ) |
| INC.; INTERNATIONAL LICENSING CORPORATION, INC.; | ) |
| and ROBERT N. WAXMAN; PETER DORAN; DARRELL | ) |
| MORMANDO; JULIAN GUMPEL; and GREG WILSON, | ) |
| | ) |
| Defendants. | ) |
| | ) |

COMPLAINT FOR INJUNCTION
AND OTHER EQUITABLE RELIEF

1

PX0001

Plaintiff, the Federal Trade Commission ("Commission"), by its undersigned attorneys, alleges as follows:

1.    The Commission brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to secure preliminary and permanent injunctive relief and other equitable relief, including rescission, restitution, and disgorgement, against defendants for engaging in deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3.    Venue in this district is proper under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## THE PARTIES

4.    The Commission is an independent agency of the United States government created by the FTC Act, 15 U.S.C. §§ 41-58. The Commission enforces the FTC Act, which prohibits deceptive acts or practices in commerce. The Commission may initiate federal district court proceedings to enjoin violations of the FTC Act, and to secure such equitable relief as is appropriate in each case, including redress for injured consumers. 15 U.S.C. § 53(b).

5.    Defendant International Product Design, Inc. ("IPD") is a Nevada corporation. Until 1994, IPD's principal place of business was located at 5130 MacArthur Boulevard, N.W., Washington, D.C.   IPD has engaged in the sale of research and invention promotion

2

PX0002

services to individual inventors located throughout the United States. IPD transacts or has transacted business in the Eastern District of Virginia.

      6.    Defendant The Innovation Center, Inc. ("TIC") is a District of Columbia corporation. Until 1994, TIC's principal place of business was located at 5130 MacArthur Boulevard, N.W., Washington, D.C.. TIC has engaged in the sale of research and invention promotion services to individual inventors located throughout the United States. TIC transacts or has transacted business in the Eastern District of Virginia.

      7.    Defendant National Idea Center, Inc. ("NIC") is a Nevada corporation. Until 1994, NIC's principal place of business was located at 4545 42nd St., N.W., Washington, D.C.. NIC has engaged in the sale of research and invention promotion services to individual inventors located throughout the United States. NIC transacts or has transacted business in the Eastern District of Virginia.

      8.    Defendant American Invention Associates, Inc. ("AIA") is a Florida corporation with a principal place of business at 801 Brickell Avenue, 9th Floor, Miami, FL 33131. AIA also has offices located at 12310 Pinecrest Road, Suite 206, Reston, VA 22091. AIA is engaged in the sale of research and invention promotion services to individual inventors located throughout the United States. AIA transacts business in the Eastern District of Virginia.

      9.    Defendant Invention Consultants, U.S.A., Inc. ("ICU") is a Pennsylvania corporation with a principal place of business at 2 Penn Center Plaza, Ste. 200, Philadelphia, PA 19102. ICU also has offices located at 12310 Pinecrest Road, Ste. 206, Reston, VA 22091. ICU is engaged in the sale of research and invention promotion services to individual

3

PX0003

inventors located throughout the United States. ICU transacts business in the Eastern District of Virginia.

10.     Defendant New Products of America, Inc. ("NPA") is a Nevada corporation with a principal place of business at 1201 Peachtree St., N.E., Atlanta, GA 30361. NPA also has offices located at 12310 Pinecrest Road, Ste. 206, Reston, VA 22091. NPA is engaged in the sale of research and invention promotion services to individual inventors located throughout the United States. NPA transacts business in the Eastern District of Virginia

11.     Defendant International Licensing Corporation, Inc. ("ILC") is a Virginia corporation with a business address at Hunter's Woods Business Park, Suite 7030, Reston, VA 22091. In company literature issued to clients of AIA, ICU, and NPA, ILC represents that it is the "licensing affiliate" of these companies, and that it has successfully licensed a large number of inventions on behalf of these companies' clients. ILC transacts business in the Eastern District of Virginia.

12.     Defendant Azure Communications, Inc., dba London Communications, Inc. ("LCI"), is a Delaware corporation with a principal place of business at 12310 Pinecrest Road, Ste. 206, Reston, VA 22091. LCI is the corporate headquarters of defendants AIA, ICU, NPA, and ILC, and performs advertising, accounting, and administrative services for these companies. LCI transacts business in the Eastern District of Virginia.

13.     Defendant corporations IPD and NIC are the direct corporate predecessors of defendant corporations AIA, ICU, and NPA. Defendant corporation TIC is the direct corporate predecessor of defendant corporation LCI.

4

14. The foregoing defendant corporations — IPD, TIC, NIC, AIA, ICU, NPA, LCI, and ILC — operate together as part of a common enterprise (hereinafter "the Waxman Enterprise") to sell research and invention promotion services to individual inventors located throughout the United States. Through the services provided by defendant LCI, headquartered in Reston, Virginia, defendants IPD, TIC, NIC, AIA, ICU, NPA, and ILC currently transact business in the Eastern District of Virginia. Defendant corporations IPD, TIC, and NIC are no longer engaged in the sale of invention promotion services to new clients. However, through the services provided by defendant LCI, defendant corporations IPD, TIC, and NIC continue to provide customer services to clients with whom they have entered into contracts in the past.

15. Defendant Robert N. Waxman is listed as Vice President of defendant TIC. Individually, or in concert with others, he directs, controls, formulates or participates, or has directed, controlled, formulated, or participated, in the acts and practices of the Waxman Enterprise. He transacts or has transacted business in the Eastern District of Virginia.

16. Defendant Peter Doran is President of defendant AIA. Individually, or in concert with others, he directs, controls, formulates, or participates in the acts and practices of the Waxman Enterprise. He transacts business in the Eastern District of Virginia.

17. Defendant Darrell Mormando is President of defendant IPD. Individually, or in concert with others, he directs, controls, formulates, or participates in the acts and practices of the Waxman Enterprise. He transacts business in the Eastern District of Virginia.

PX0005

18.    Defendant Julian Gumpel is President of defendant NPA. Individually, or in concert with others, he directs, controls, formulates, or participates in the acts and practices of the Waxman Enterprise. He transacts business in the Eastern District of Virginia.

19.    Defendant Greg Wilson is Vice President of defendant ICU. Individually, or in concert with others, Wilson directs, controls, formulates, or participates in the acts and practices of the Waxman Enterprise. He transacts business in the Eastern District of Virginia.

### DEFENDANTS' COURSE OF CONDUCT

20.    Since at least January 1990, and continuing thereafter, defendants, as part of the Waxman Enterprise, have maintained a substantial course of trade in offering and selling research and invention promotion services to individual inventors located throughout the United States. Defendants, individually or as part of the Waxman Enterprise, sell customers two basic services: (1) a research report that costs anywhere from $300 to $900, and (2) an invention assistance agreement that costs anywhere from $3,000 to $10,000. The research report purportedly constitutes a market, patentability and product evaluation of the idea or product. The invention assistance agreement provides that in exchange for a service fee, the company will help promote the idea or product to industry in an effort to secure a licensing agreement for the customer.

21.    Defendants offer and sell their invention promotion services to consumers across the country through the use of, among other things, advertisements on television, written promotional materials sent through the United States mail, and telephone sales presentations.

6

PX0006

22.    Defendants' course of trade is in or affecting commerce, within the meaning of Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' VIOLATION OF THE FTC ACT

23.    Defendants represent, expressly or by implication, that purchase of their research and invention promotion services is likely to result in financial gain for their customers.

24.    In truth and in fact, purchase of defendants' research and invention promotion services is not likely to result in financial gain for their customers. Indeed, the likelihood that a consumer will achieve financial gain as a result of defendants' services is extraordinarily low, if not nonexistent.

25.    Therefore, defendants' representation as set forth in Paragraph 23, above, is false and misleading, and constitutes deceptive acts or practices in violation of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

26.    Defendants' violations of Section 5(a) of the FTC Act have injured and will continue to injure consumers. Because of defendants' misrepresentations of material facts, consumers have made and will continue to make investments that are likely to cause substantial financial injury, absent injunctive relief.

## THIS COURT'S POWER TO GRANT RELIEF

27.    Section 13(b) of the FTC Act empowers this Court to issue injunctive and other relief against violations of the FTC Act and, in the exercise of its equitable jurisdiction, to

7

award redress to remedy the injury to consumers, to order disgorgement of monies resulting from defendants' unlawful acts or practices, and to order other ancillary equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that this Court:

(1) Award the Commission all temporary and preliminary injunctive and ancillary relief that may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions and an order freezing each defendant's assets;

(2) Enjoin defendants permanently from violating Section 5(a) of the FTC Act, including committing such violations in connection with the advertising, offering for sale, or other promotion of invention promotion services;

(3) Award such relief as the Court finds necessary to redress injury to consumers resulting from defendants' violatons of Section 5(a) of the FTC Act, including, but not limited to, the rescission of contracts or refund of money, and the disgorgement of unlawfully obtained monies; and

8

PX0008

(4) Award plaintiff the cost of bringing this action as well as such additional equitable relief as the Court may determine to be just and proper.

Respectfully submitted,

DATED: _July 14, 1997_

DAVID C. FIX
RAOUF ABDULLAN
MICHELLE CHUA
Federal Trade Commission
6th & Pennsylvania Avenue, NW
Washington, D.C. 20580
(202) 326-3248

DATED: _July 14, 1994_

DENNIS E. SZYBALA
Va Bar No. 22785
Office of the U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314

9

PX0009

**EXHIBIT B**

**Ex Parte Temporary Restraining Order**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>Plaintiff,<br>v.<br><br>INTERNATIONAL PRODUCT DESIGN, INC; THE<br>INNOVATION CENTER, INC.; NATIONAL IDEA<br>CENTER, INC.; NEW PRODUCTS OF AMERICA INC.;<br>AZURE COMMUNICATIONS, INC. dba LONDON<br>COMMUNICATIONS, INC.; INTERNATIONAL<br>LICENSING CORPORATION, INC.; ROBERT N.<br>WAXMAN; PETER DORAN; DARELL MORMANDO;<br>JULIAN GUMPEL; AND GRED WILSON,<br><br>Defendants, | : Case No. 1:97-cv-01114-AVB<br>: Judge Lee<br>:<br>: **U. S. DISTRICT COURT - DE**<br>: **MISC. CASE #   07-11**<br>:<br>: |

## NOTICE OF RECEIVERSHIP

NOW COMES Phillip S. Stenger, by and through his attorneys, Stenger &

Stenger, P.C., as the Court-appointed Receiver for Technical Lithographers, Inc., d/b/a

Patent & Trademark Institute of America; United Licensing Corp.; International Patent

Advisors, Inc.; Datatech Consulting, Inc.; International Product Marketing, Inc.; Unicorp

consulting, Inc.; Azure Communications, Inc., and London Communications, Inc., and

provides notice of his appointment as receiver pursuant to 28 U.S.C. §754 and files with

the Clerk a copy of the Complaint (attached as **Exhibit A**) and the Ex Parte Temporary

Restraining Order (attached as **Exhibit B**).

Respectfully Submitted,
STENGER & STENGER, P.C.
Attorneys for the Receiver

Dated: January 22, 2007                    By: _____
                                               Sara E.D. Fazio (P62046)
                                               Business Address:
                                               4095 Embassy Drive, S.E., Suite A
                                               Grand Rapids, MI 49546
                                               Telephone: (616) 940-1190

# STENGER & STENGER

A PROFESSIONAL LAW CORPORATION

PHILLIP S. STENGER
LEWIS G. MOSBURG, JR.*
KAY GRIFFITH HAMMOND
SARA E.D. FAZIO
HEATHER A. ADAMS**
SCOTT A. NOTO
JOSEPH S. SCHAEFER***

OF COUNSEL
LEE T. SILVER
DOUGLAS W. VAN ESSEN

4095 EMBASSY DRIVE. S.E.
SUITE A
GRAND RAPIDS, MICHIGAN 49546

WEB SITE: stengerlaw.com

TELEPHONE (616) 940-1190
FACSIMILE (616) 940-1192

INDIANA OFFICE
5514 NORTH TACOMA AVENUE
SUITE 105
INDIANAPOLIS, INDIANA 49220
TELEPHONE (317) 536-6196
FACSIMILE (317) 536-6211

*ALSO ADMITTED IN OKLAHOMA
**ALSO ADMITTED IN WISCONSIN
***ONLY ADMITTED IN INDIANA

PLEASE REPLY TO GRAND RAPIDS

January 22, 2007

## *VIA FEDERAL EXPRESS*

Clerk of the Court
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

**U. S. DISTRICT COURT - DE**
**MISC. CASE #    07-11**

Re: *Federal Trade Commission v. Technical Lithographers, Inc., d/b/a Patent &
Trademark Institute of America et al.*
United States District Court for the Eastern District of Virginia
Case No. 1:97-cv-01114-AVB

Dear Clerk:

Our client, Phillip S. Stenger, has been appointed receiver for Technical
Lithographers, Inc. d/b/a Patent & Trademark Institute of America et al. by Judge Lee
pursuant to the above-referenced action pending in the United States District Court for the
Eastern District of Virginia. Assets that belong to the entity in receivership, Technical
Lithographers, Inc. d/b/a Patent & Trademark Institute of America et al., may be located in
the District of Delaware. Accordingly, enclosed for filing pursuant to 28 U.S.C. §754
please find a Notice of Receivership with a copy of the Complaint filed in the above-
referenced matter and the Order Appointing Receiver for Technical Lithographers, Inc.
d/b/a Patent & Trademark Institute of America et al. attached.

Also enclosed please find a check in the amount of $39.00 payable to the United
States District Court for the District of Delaware for the miscellaneous civil filing fee.
Once this document has been filed, please return one date-stamped copy to this office in
the enclosed self-addressed, stamped envelope. Please note that we would appreciate the
filing and return of this document as soon as possible, as the matter is extremely time
sensitive.

Thank you for your time and attention to this matter. If you have any questions or
concerns, please do not hesitate to contact me.

United States District Court
District of Delaware
January 22, 2007
Page 2

_____

Very truly yours,

**STENGER & STENGER, P.C.**

Sara E. D. Fazio

Enclosures